UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT G.,[1] | ) |
| | ) No. 22 CV 2848 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| FRANK BISIGNANO, Commissioner of Social Security, | ) |
| | ) |
| | ) May 27, 2025 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Robert G. seeks disability insurance and social security income benefits ("DIB" and "SSI," respectively) asserting that he is disabled because of several conditions related to headaches and back and neck injuries exacerbated by an August 2018 car accident. He brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for benefits. For the following reasons, Robert's remand request is granted:

**Procedural History**

Robert filed DIB and SSI applications in February 2019 claiming disability onset on August 26, 2018. (Administrative Record ("A.R.") 22.) After his applications were denied initially and upon reconsideration at the administrative level, he sought and was granted a hearing before an Administrative Law Judge ("ALJ"). (Id. at 22, 202-07.) Robert appeared with his attorney at an August 2021 telephonic hearing at

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Robert's first name and last initial in this opinion to protect his privacy to the extent possible.

which he and a vocational expert ("VE") testified. (Id. at 42-94.) The ALJ then ruled in September 2021 that Robert is not disabled. (Id. at 19-37.) The Appeals Council denied Robert's request for review, (id. at 1-8), making the ALJ's denial the final decision of the Commissioner, *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Robert then filed this action seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 6).

## Analysis

Robert argues that the ALJ erred when: (1) finding state agency consultative examiner Dr. Titilayo Abiona's opinion unpersuasive as to Robert's climbing and standing limitations; (2) evaluating Robert's symptom statements and hearing testimony; and (3) deeming Robert's obesity a non-severe impairment and failing to account for his light sensitivity in his residual functional capacity ("RFC") assessment. (See generally R. 14, Pl.'s Mem.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and the decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a

claimant's limitations," *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021), and "provide an explanation . . . 'sufficient to allow [the] reviewing court[] to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review,'" *Warnell v. O'Malley,* 97 F.4th 1050, 1054 (7th Cir. 2024) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). Having considered the record under this standard, the court finds that remand is warranted.

A. **Opinion Evidence**

The court turns first to alleged errors in the ALJ's analysis of consultative examiner Dr. Abiona's opinion because any error there would require a reassessment of Robert's RFC. An ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must assess the persuasiveness of all medical opinions by considering and explaining the most important factors: supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The supportability factor requires consideration of the objective medical evidence and explanations presented and used by the medical source. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor directs the ALJ to consider and explain how the opinion is consistent with all other medical and non-medical sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Dr. Abiona opined in June 2019 that Robert suffers from vertigo and headaches and, as a result, has standing and climbing limitations. (A.R. 440.) This opinion was based on a review of the medical records and an examination of Robert, who reported

3

that he can sit normally, stand for 5-10 minutes at a time, walk up to 2 blocks at a time, and climb stairs 10-13 steps at a time, but needs to hold on to the rails and climb slowly. (Id. at 438.) Also in June 2019, state agency reviewing physician, Dr. Vidya Madala, opined that Robert was capable of medium work but should avoid concentrated exposure to heights and hazards. (Id. at 101-04.) In February 2021, another state agency reviewing physician, Dr. Raynaldo Gotanco opined that Robert was capable of medium work but that he should only occasionally climb ladders, ropes, and scaffolds. (Id. at 135, 137.)

The ALJ ultimately adopted an RFC that largely tracks the reviewing consultants' opinions, finding Robert capable of medium work with height and excessive noise limitations:

> [h]e can frequently climb ramps or stairs, balance, stoop, crouch, kneel and crawl. He has to avoid concentrated exposure to excessive noise of more than moderate intensity as defined in the Dictionary of Occupational Titles. He has to avoid concentrated use of hazardous machinery and exposure to unprotected heights. If change in position is necessary, he can tolerate occasional change in posture from sitting to standing.

(Id. at 29.) The ALJ found Dr. Abiona's opinion regarding Robert's standing and climbing limitations "unpersuasive" because it lacked "precise functional limitations" and was "not consistent with the preponderance of the record showing the clinical examinations of other providers . . . reveal no problems with station and/or standing." (Id. at 35 (citing id. at 440).)

At the outset, the government suggests that Dr. Abiona's opinion "hardly even qualifies as a medical opinion" because it "revealed nothing in the way of functional

4

limitations or restrictions." (R. 23, Govt.'s Mem. at 10.) But medical opinions are more than mere "statements about whether a claimant can perform specific workplace demands." *Jones v. Dudek*, 134 F.4th 991, 997 (7th Cir. 2025). A physician's clinical impression about "what the claimant 'can still do'" is a medical opinion. *Id.* (citing 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2)). Dr. Abiona opines that Robert "has limitations with standing and climbing" but remains able to "sit, handle objects, hear and speak without limitations." (A.R. 440.) Such a statement, even without setting forth "specific workplace demands," is a medical opinion. *See Jones*, 134 F.4th at 997.

Robert first contends that the ALJ erred by discrediting Dr. Abiona's opinion because it was based on a single examination on a single day. (R. 14, Pl.'s Mem. at 10-11.) This is especially "puzzling," Robert claims, because the ALJ found persuasive the opinions of reviewing physicians Dr. Madala and Dr. Gotanco,[2] even though neither ever examined Robert. (Id.) An ALJ may not discount the opinion of an examining physician without a "valid explanation." *See Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). But as the government points out, the ALJ noted that he compared Dr. Abiona's opinion with other evidence of record as required under 20 C.F.R. § 404.1520c(c)(2) and then discounted it based on inconsistencies. (R. 23, Govt.'s Mem. at 9 (citing A.R. 31-32).) So long as that comparison was appropriate, the ALJ was entitled to find Dr. Abiona's opinion unpersuasive while finding the

---

[2] The ALJ found unpersuasive one aspect of Dr. Gotanco's opinion, which limited Robert to occasionally climbing ladders, ropes, and scaffolds, because this restriction was "not supported by the record as a whole." (A.R. 35.)

5

opinions of Drs. Madala and Gotanco persuasive. Still, Robert argues that if Dr. Abiona's opinion was unpersuasive for the reasons the ALJ provided—that is, that her report includes "nonspecific conclusions" that "are not consistent" with the record—then the regulations direct the ALJ to contact Dr. Abiona for "additional evidence or clarification." (R. 14, Pl.'s Mem. at 10 (citing 20 C.F.R. § 404.1520b).)

Robert is correct that an ALJ must develop a full and fair record, (id.), and if information required for an ALJ to properly assess the extent of the claimant's limitation is missing from a medical examiner's report, he or she must gather additional information, *see Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000). If an ALJ fails to gather sufficient information to assess the extent of a claimant's limitation where necessary, there is good cause to remand to gather that information. *See id.* at 437. But an ALJ need not contact the medical source where the record provides "adequate information" to assess the claimant's disability or limitation and "render a decision." *Britt v. Berryhill*, 889 F.3d 422, 427 (7th Cir. 2018); *see also* 20 C.F.R. § 404.1520c(c)(5) (permitting ALJ to assess the consistency of an opinion against later evidence to determine whether it makes the opinion "more or less persuasive"). Here, the ALJ appropriately considered the record and was able to render a decision without seeking additional information.

Robert next argues that the ALJ concluded, contrary to records and without an explanation, that "clinical examinations of other providers" contradict Dr. Abiona's opinions by "reveal[ing] no problems with station and/or standing." (R. 14, Pl.'s Mem. at 11 (citing A.R. 35).) The government defends that the ALJ assessed records,

6

including those after Dr. Abiona's 2019 assessment, (A.R. 437-40), that adequately spoke to Robert's ability to stand and climb, (R. 23, Govt.'s Mem. at 9 (citing A.R. 31)). The ALJ in fact cited to records discussing Robert's ability to walk and move generally and the strength of his legs. (A.R. 31-32 (citing id. at 462 (noting in March 2020 that Robert was walking with normal gait), 452 (noting in December 2020 Robert's non-antalgic gait, full strength in legs, and negative straight-leg raise test), 771 (noting in January 2021 Robert walking on heels and toes with no difficulty and normal gait and Romberg test) 610-11 (noting in January 2021 Robert walking more than 50 feet without support, walking on toes and standing on one leg, and demonstrating full leg strength), 820 (noting in March 2021 continued improvement with strengthening and range of motion activities), 680 (noting in July 2021 improvement with back and lumbar movement after treatment).) The ALJ also flagged several physical therapy records showing that Robert's strength and range of motion were "gradually improving with therapy." (See id. at 31-32 (citing id. at 525, 680, 820).) These records constitute substantial evidence supporting the ALJ's conclusion that climbing limitations were not warranted. The court cannot reweigh evidence or substitute its judgment for that of the ALJ here. *See Deborah M.*, 994 F.3d at 788.

That said, it is unclear to the court how these same records demonstrate the inconsistency of Dr. Abiona's opinion about Robert's standing limitation. The only record the ALJ assessed describing Robert's ability to stand was Dr. Abiona's opinion, which he deemed unpersuasive. (A.R. 30-31, 35.) As Robert points out, other evidence that the ALJ did not address strongly suggests he experiences difficulty

7

standing, moving from sitting to standing, and vice versa, (see, e.g., id. at 439 (noting in June 2019 "severe difficulty" standing on toes bilaterally), 456 (noting in September 2020 difficulty standing from a seated position or sitting from a standing position), 647 (noting in October 2020 pain from sitting to standing), 652 (noting in October 2020 that physical therapy is "medically necessary to address patient's functional limitations including . . . standing"), 631-32 (noting in October 2020 struggles with standing); 454 (noting in November 2020 difficulty moving from seated to standing), 452-53 (noting in December 2020 worst pain moving from sitting to standing), 605-11 (noting in January 2021 inability to stand on heels), 717-19 (noting in February 2021 worse lower back pain with standing), 727 (noting in February 2021 difficulty standing for one hour and moderate difficulty changing positions quickly from sitting to standing), 700-01 (noting in March 2021 dizziness while moving from seated position to standing), 811 (noting in April 2021 difficulty standing from seated position), 807 (noting in June 2021 difficulty standing from seated position).) This evidence comports with Robert's hearing testimony that he can stand in one place for only "about ten minutes" before needing to steady himself to avoid losing his balance. (Id. at 79-80.)

In other words, it is unclear whether the ALJ considered records that are consistent with Dr. Abiona's opinion that Robert's RFC would require a standing limitation. "[A]lthough an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting [his] ultimate conclusion while ignoring the evidence that undermines it." *Moore*, 743 F.3d at 1123.

8

The ALJ may have good reasons for siding with one view of the records as to Robert's ability to stand, but he did not explain them here. As such, a remand is warranted on this basis.

**B.     Subjective Symptom Assessment**

The court next turns to Robert's complaints about the ALJ's subjective symptom assessment. An ALJ's symptom evaluation is entitled to great deference and may be reversed only where "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014). That said, an ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence," *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015), and must consider factors such as medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors, SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017). But the court will not disturb an ALJ's subjective symptom evaluation that is logically based on specific findings and evidence in the record. *See Murphy*, 759 F.3d at 815.

The ALJ reviewed symptoms Dr. Abinoa observed in June 2019, (A.R. 30-31 (citing id. at 439-44)), neurologist Dr. Olga Kozlova in January 2021, (id. at 31 (citing id. at 771)), and Dr. Muhammad Rafiq in January 2021, (id. at 32 (citing id. at 607-12)). He also considered the reports of the reviewing physicians, (id. at 25), and objective evidence including an August 2018 CT scan, a September 2018 EEG and brain scan, a January 2020 MRI, and December 2020 x-rays, (id. at 30-31 (citing id. at 381, 385, 428, 483, 491)). And the ALJ reviewed Robert's physical therapy records, reflecting his progress in regaining strength and range of motion. (Id. at 31-32 (citing

9

id. at 525, 680, 820).) Across these records, Robert complained of neck and back pain, (see, e.g., id. at 548-549), reduced motion and strength affecting his functional activities, (id.), limited rotation, (id. at 462), difficulty bending over, (id. at 659-67, 670), pain from standing and difficulty moving from sitting to standing, (id. at 647, 631, 717-19, 807), inability to sit for prolonged periods, (id. at 778), and daily headaches, (id. at 402, 518, 420, 425-27, 548-49, 770-72, 807). From this and other evidence, the ALJ concluded that Robert's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Id. at 32.) For support, the ALJ pointed to Robert's daily activities—including his apparent lack of distress during several of those activities where he was exposed to fluorescent lights—and his non-compliance with prescribed medication and treatment. (Id. at 32-33.)

Robert claims that the ALJ failed to recognize and consider "the 'critical differences' between activities of daily living" and the activities one would perform in their full-time job. (R. 14, Pl.'s Mem. at 13 (quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).) Daily activities generally must be considered "with care," *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013), meaning before an ALJ can hold such activities against a claimant, he must "explain the 'inconsistencies' between [the] activities . . . complaints of pain, and the medical evidence," *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001), and address any limitations in the claimant's performance of those activities, *see, e.g.*, *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir.

10

2008) (remanding where ALJ ignored claimant's qualifications as to how he carried out activities).

The ALJ here concluded that Robert's daily activities, including watching television, doing laundry, driving, shopping, and raking leaves, are "not limited to the extent one would expect" from someone who is disabled. (A.R. 33.) The ALJ also pointed to a physical therapy intake form showing Robert's "current activity level" was "very active." (Id.) Robert claims that merely pointing to an example where he raked leaves as evidence of his physical ability is "misplaced and a mischaracterization" because he was not able to finish raking because of pain. (R. 14, Pl.'s Mem. at 14 (citing A.R. 564).) However, the ALJ also assessed several other records and reached the same conclusion. For instance, the ALJ discussed Robert's statements to Dr. Rafiq in January 2021 that he was able to lift 50 pounds, stand and sit normally, cook, drive, shop, climb a flight of stairs, and vacuum. (A.R. 32, 33 (citing id. at 564, 606).) While it was disputed at the hearing whether Robert or a member of the physical therapy staff filled out the form that noted he is "very active," (id. at 66, 71-72), the ALJ reasonably concluded that the information came from Robert, (id. at 33). This part of the ALJ's assessment is not patently wrong.

However, other aspects of the ALJ's analysis give this court pause. For example, the ALJ declined to credit Robert's complaints of light sensitivity because he did not appear distressed in situations where bright lighting was presumably present, including while shopping at big box stores, attending doctor's office visits, and dining out. (A.R. 33.) The ALJ is correct that there is little evidence of distress

11

during medical appointments, except during an October 2021 physical therapy visit in which Robert experienced "light sensitivity." (Id. at 670.) The ALJ questioned Robert's alleged sensitivity given that Robert visited establishments with more than minimal light levels, citing a physical therapy record from February 2021 in which Robert reported sustaining injuries at a Sam's Club store but did not mention any light sensitivity. (A.R. 33 (citing id. at 716 ("Bad fall at Sam's club, tripped on a flawed display hit a shopping cart and 'crunched bones in the neck. Laminectomy in 2017.").) The government uses this record as support for affirming the ALJ's decision, (R. 23, Govt.'s Mem. at 8 ("[t]he record did in fact show plaintiff shopped at 'big-box' stores including Sam's Club.")) but Robert's visit to Sam's Club occurred three years before the 2018 car accident—when Robert alleges he became disabled—and should not have any bearing on Robert's credibility regarding light sensitivity, (see R. 14, Pl.'s Mem. at 2 (citing A.R. 587 ("[Robert's] initial injury was a fall at Sam's Club on 07/05/15."))).

The only other evidence the ALJ cites in support of his finding is a note from a June 2021 physician visit during which Botox treatment is discussed to treat Robert's migraines and a "nerve block" treatment "to which [Robert] fully responded." (Id. at 33 (citing id. at 807).) But this record: (1) does not address the efficacy of the Botox treatments; (2) suggests Robert was bothered by headaches, not the opposite; and (3) shows that the nerve block treatment was related to his tailbone pain rather than his headaches or light sensitivity. (Id.) Thus, the ALJ's analysis here appears to lack the support of substantial evidence.

Robert further argues that the ALJ's rejection of his subjective symptom allegations was "nearly entirely predicated on a perceived non-compliance with treatment." (R. 14, Pl.'s Mem. at 12.) For instance, the ALJ observed that Robert was discharged from physical therapy in December 2020 after missing six weeks of treatment. (A.R. 34.) The ALJ also noted that Robert was inconsistent with his prescribed pain medication, despite evidence of Robert feeling relief from Depakote in December 2018 and Topamax in 2021. (Id. at 30, 32, 33.) Additionally, the ALJ noted that Robert did not take prescribed Nortriptyline daily, and only "took Fioricet as needed because he was unable to afford the medication." (Id. at 34 (citing id. at 418, 426).)

An ALJ may consider noncompliance with recommended treatment when evaluating the severity of a claimant's symptoms. *See Weaver v. Berryhill*, 746 Fed. Appx. 574, 579 (7th Cir. 2018) (reasoning that noncompliance "allowed the inference that the severity of [claimant's] symptoms would be diminished if []he followed [his] doctors' advice"). But the ALJ must first "explore the claimant's reasons for the lack of medical care before drawing a negative inference" from "failure to follow a treatment plan." *Shauger v. Astrue*, 675 F.3d 690, 676 (7th Cir. 2012); *see also Craft*, 539 F.3d at 679 (holding that "failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure"). An ALJ may not draw a negative inference about limited treatment without considering the claimant's explanations. *See Kelly v. Colvin*, No. 12 CV 5580, 2014 WL 4388546, at *6 (N.D. Ill. Sept. 3, 2014) ("[R]emand is necessary where an ALJ's

13

credibility determination is based on evidence cherry-picked from the record, selected without consideration of the context in which they appear." (quotation and citation omitted)).

Here, the ALJ failed to consider factors contributing to Robert's treatment non-compliance. Robert testified that he could not afford prescribed medications. (A.R. 83.) The ALJ acknowledged this fact but discounted Robert's explanation on grounds that he had easy access to prescriptions and specialist treatment in his "suburban community" and could use "Good Rx," a low-cost prescription drug service. (A.R. 34 (citing id. at 426-27)). Additionally, the ALJ questioned Robert at the hearing as to why "the insurance company" for the other driver in the 2018 car accident was not covering Robert's treatment expenses. (Id. at 57, 61.) The ALJ found Robert's answer—that providers would not accept a promise of payment through a lien—"unreasonable" because "though some providers will not accept a lien for services provided, there are likely many who would." (Id. at 34.) The ALJ noted his "impression" that Robert "completely deferred" to his attorney and the treatment providers "without taking any active role himself" related to treatment of his injuries resulting from the 2018 accident. (Id.)

Although the government states without support that neurologist Dr. Kozlova would have accepted a lien on Robert's claim for specialist treatment, (R. 23, Govt.'s Mem. at 6 (citing A.R. 34, 83-84)), the portion of Robert's testimony the government cites establishes only that Robert's personal injury attorney referred Robert to Dr. Kozlova, (A.R. 83-84). There is no evidence that Dr. Kozlova agreed to

14

treat Robert based on payment through a litigation lien. (A.R. 83-84.) While it may be common practice for personal injury attorneys to refer their clients to select medical providers knowing that they may not demand immediate payment for services rendered, this court is not willing to assume such facts without some evidence in the record. And there is little evidence that Robert "completely deferred" to his lawyers or treaters regarding his medical treatment. (Id. at 34.) Instead, Robert only testified that he did not "know any particulars about" the process of the personal injury lawsuit because "that's what my lawyer is doing." (Id. at 53.)

As such, it was not reasonable for the ALJ to assume Robert could have sought other means of paying, including through the insurer or his personal injury attorney. (Id.) As Robert points out, the ALJ was "not privy to factors such as policy limits, liability, attorney legal strategy or potential for settlement," (R. 14, Pl.'s Mem. at 12), and the record provides no indication on whether settlement funds or the policy limits related to the 2018 accident have been exhausted. Robert was briefly questioned on the availability of funds from the personal injury case during the hearing, but he was not aware of the status of the case at that time. (A.R. 62-65.) Substantial evidence does not support the ALJ's inference that some providers or pharmacies were willing to wait for payment pending a lawsuit settlement. Accordingly, the ALJ must reevaluate Robert's symptom statements on remand.

## C. Physical RFC Assessment

Robert also complains about the ALJ's physical RFC assessment. An RFC measures the tasks a person can perform given his or her limitations based on "all

15

the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). The ALJ must incorporate a claimant's limitations, including those that are not severe, in developing the RFC, and may not simply dismiss a line of evidence that is contrary to the ruling. *See Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020). In so doing, the ALJ must "say enough to enable review of whether [he] considered the totality of a claimant's limitations," *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022), providing a "logical bridge" between the evidence and his conclusions, *Butler*, 4 F.4th at 501.

Robert asserts that the ALJ failed to account for his obesity combined with his other medically determinable impairments when crafting the RFC. For example, he argues that his obesity was "likely a considerable factor" resulting in a functional limitation evidenced by his "abnormal gait and maneuver testing," which he suggested would "impact" his ability to sustain competitive work. (R. 14, Pl.'s Mem. at 6 (citing A.R. 439, 545, 561, 607, 811).) But none of the records Robert cites suggests that Robert's obesity limited his ability to work. They instead reflect Robert's difficulty standing from a seated position, (A.R. 439, 454, 811), inability to hop on one leg, (id. at 439, 607), and shortened stride length, (id. at 561). At times, these issues appear in the same records in which Robert's obesity is noted. (See, e.g., id. at 454.) But the ALJ pointed to notes from examinations over the years, including consultative physical examinations, reflecting "entirely normal" results and an

16

ability to walk greater than 50 feet without support and grasp and manipulate objects normally. (Id. at 32 (citing id. at 607-08).)

The ALJ also considered but reasonably rejected the reviewing physicians' opinions that Robert's obesity was "severe" based on the foregoing and because Robert "did not report how his weight has had any impact on his abilities to perform basic work activities." (Id. at 25.) Robert disputes this, referencing his testimony where he said his inactivity resulting from his disability caused weight gain. (R. 14, Pl.'s Mem. at 7 (citing A.R. 78-79).) But his testimony suggests that his alleged disability caused his weight gain, not that his weight gain caused his disability. (A.R. 78-79.) Because Robert's complaint on this point amounts to a request to reweigh evidence, it cannot be sustained. *See Bertha M. v. Saul*, 395 F. Supp. 3d 963, 971 (N.D. Ill. 2019) (holding remand not warranted where ALJ "engaged with both sides of the record and weighed the evidence in a different way than plaintiff would have liked").

Robert next argues that the ALJ failed to account for his light sensitivity and his fatigue, (see, e.g., A.R. 76-77), both of which aggravate his headaches, (R. 14, Pl.'s Mem. at 7-9). According to Robert, ignoring these conditions meant the ALJ "improperly formatted an outcome-based RFC rather than basing the restrictions on the evidence in the record." (R. 14, Pl.'s Mem. at 8.) For the reasons already detailed, the ALJ may need to reconsider Robert's alleged light sensitivity when reassessing his RFC. And the ALJ did not address the evidence related to Robert's fatigue, as was required. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013) ("The ALJ should

17

have evaluated [the claimant's] subjective reports of [] fatigue"). As such, the ALJ must consider these conditions on remand.

## Conclusion

For the foregoing reasons, Robert's remand request is granted, and this matter is remanded for further proceedings consistent with this opinion.

                **ENTER:**

                _____
                **Young B. Kim**
                **United States Magistrate**